**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **15 CR 623** |
| **v.** | ) | **Honorable Matthew F. Kennelly** |
| | ) | |
| **MICHAEL HALDORSON,** | ) | |
| **Defendant.** | ) | |

## DEFENDANT MICHAEL HALDORSON'S MEMORANDUM IN SUPPORT OF HIS MOTION TO SUPPRESS EVIDENCE

The defendant, MICHAEL HALDORSON, by and through his attorney, Quinn A. Michaelis, submits the following memorandum of law in support of his Motion to Suppress Evidence.

### I.    Introduction

Michael Haldorson ("Mr. Haldorson") is charged with one count of knowingly and intentionally distributing a quantity of cocaine in violation of 21 U.S.C. § 841(a)(1); one count of knowingly and intentionally possessing with intent to distribute a quantity of cocaine in violation of 21 U.S.C. § 841(a)(1); one count knowingly and intentionally possessing with intent to distribute a quantity of MDMA, in violation of 21 U.S.C. § 844(a); one count of carrying smokeless powder during the commission of a felony, in violation of 18 U.S.C. § 844(h)(2); one count of knowingly possessing a destructive device, in violation of 26 U.S.C. § 5861(d); one count of knowingly possessing smokeless powder after previously having been convicted of a crime punishable by one year, in violation of 18 U.S.C. § 842(i)(1); and one count of knowingly possessing a

firearm after having previously been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1).

## II.    Factual Background

On June 23, 2015, WCPAT Insp. Marzetta contacted Plainfield Police Officer Friddle #151 via telephone and directed him to pull over a black Pontiac G8 with Illinois license plate MKJNZ, a White Sox plate, because WCPAT had probable cause to arrest the driver, Michael Haldorson.  Officer Friddle located the described vehicle and immediately performed a traffic stop.

Officer Friddle wrote in his report that he pulled the vehicle over because he observed a violation of the Illinois Vehicle Code; namely, Sec. 12-212. Special restrictions on lamps, which states in part: "(a) No person shall drive or move any vehicle or equipment upon any highway with any lamp or device on the vehicle or equipment displaying a red light visible from directly in front of the vehicle or equipment except as otherwise provided in this Act." 625 ILCS 5/12-212.  Officer Friddle stated that Mr. Haldorson had a red lighting system installed and illuminated in the grill area of his vehicle.  However, the video footage obtained from Officer Friddle's squad car does not show illumination of lights on the front of Mr. Haldorson's vehicle.

After stopping Mr. Haldorson, the officer asked for Mr. Haldorson's identification and asked if he knew why he had stopped Mr. Haldorson. Mr. Haldorson said he did not, and Officer Friddle inquired about a situation that had just occurred in downtown Plainfield at "Cruise Nights," where Mr. Haldorson was alleged to be involved in an altercation that took place.  Mr. Haldorson denied knowledge of the officer's inquisitions. Officer Friddle then asked Mr. Haldorson to remain in the vehicle.  Approximately 5-7

2

minutes later the officer returned, giving back Mr. Haldorson's ID and again inquired about the altercation, further asking if Mr. Haldorson exchanged any words with an individual and had sped away squealing his tires. Mr. Haldorson again denied any knowledge or involvement in any such incident. Officer Friddle advised Mr. Haldorson to sit tight, and that the witness, a police officer, was on his way to identify whether or not Mr. Haldorson was the individual in question. He then returned to his squad car. After a few minutes, WCPAT inspectors arrived and spoke with Officer Friddle. Subsequently, Officer Friddle ordered Mr. Haldorson to exit his vehicle and he complied.

Mr. Haldorson was then placed under arrest and was informed by officer Friddle that he was being arrested pursuant to a warrant for his arrest, Mr. Haldorson's person was searched, and he was placed into Officer Friddle's squad car. WCPAT investigators then approached and entered Mr. Haldorson's vehicle and left the scene in Mr. Haldorson's vehicle. An Inspector from WCPAT drove Mr. Haldorson's vehicle to the Plainfield Police Department where the vehicle was searched. That search netted law enforcement with multiple items upon which his charges are currently based and the prosecution intends to use against Mr. Haldorson at trial.

According to WCPAT Insp. Insley, probable cause for the stop was based on a tip received from a confidential source indicating that Mr. Haldorson would be at a specific location at a specific time. (See Exhibit 1). The same confidential source had completed a controlled purchase of cocaine from Mr. Haldorson almost a month previous. This previous controlled purchase was the "charge" indicated by the WCPAT inspectors. (See Exhibit 2). On June 1, 2015 when WCPAT inspectors facilitated a controlled buy of a small amount of cocaine between Mr. Haldorson and a confidential source, identified as

C/S #14-15828. According to the written reports, C/S #14-15828 allegedly contacted a guy he knows by the name of 'Mike Jones' who drives a black Pontiac G8 with a White Sox license plate registered in the State of Illinois as MKJNZ. Insp. Marzetta, Insp. LeStronge, and officer Kaminski and Insp. Insley all purportedly assisted with the investigation and met at a pre-determined location prior to the transaction occurring. Around 8:50 p.m., C/S #14-15828 allegedly met with the inspectors at the predetermined location and the inspectors searched the both C/S #14-15828's person and vehicle. C/S #14-15828 then drove his vehicle to Walmart to meet with Mike Jones. After locating each other, C/S #14-15828 entered Mike Jones's vehicle and supposedly conducted a sale of around 2 grams of cocaine. The informant then returned to his vehicle and drove away, returning the predetermined location where WCPAT inspectors where waiting. At approximately 9:35 p.m., Mike left the area and the surveillance team attempted to follow him. During the pursuit the officers lost track of Mike because they were stopped at a red light.

On June 23, 2015, WCPAT Insp. Marzetta called Officer Friddle and requested that he stop and arrest Mr. Haldorson based upon probable cause from the June 1, 2015 controlled purchase.

As a result of Mr. Haldorson's arrest on June 23, 2015, on June 24, 2015 at 6:49 a.m. WCPAT inspectors secured a search warrant for an apartment located at 24030 Lockport Street, Plainfield, Will County, Illinois. This warrant was secured upon the evidence obtained from the June 23, 2015 seizure and arrest and resulting search incident to arrest. As a result of the execution of that search warrant WCPAT inspectors then

obtained additional search warrants for a detached garage marked as numbers "49" and "50" assigned to the address of 1310 Pioneer, Crest Hill, Illinois.

## III.    Argument

The United States Constitution guarantees the right of persons to be secure from unreasonable searches and of their persons, houses, papers, and effects.  U.S. Const. Amend. IV.  Evidence must be excluded if it was discovered by exploitation of illegal police conduct *Wong Sun v. United States*, 371 U.S. 471 (1963). "Probable cause" exists to make warrantless arrest when facts and circumstances within officer's knowledge are sufficient for reasonably prudent person to believe that suspect has committed a crime. *United States v. Cortez*, 449 U.S. 411, 418 (1981). To determine whether an officer had probable cause to arrest an individual, a court will examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause.  *Ornelas v. United States* 517 U.S. 690, 696 (1996).

The threshold for probable cause to arrest is based upon factual and practical considerations of every day life that could lead a reasonable person to believe that there is a probability that an illegal act has occurred or is about to occur.  *United States v. Strickland*, 144 F.3d 412, 416 (6th Cir. 1998).  Officers are not required to rule out every possible explanation other than a suspect's illegal conduct before making an arrest, but an arresting officer must be able to articulate concrete facts from which the totality of the circumstances indicates that an arrest is warranted.  *Illinois v. Gates*,

> **a.**    **The Search Was Improper Under The Automobile Exception To The Warrant Requirement.**

Warrantless searches are *per se* unreasonable under the Fourth Amendment. However, "police do not need a warrant to search a vehicle when they have probable cause to believe it contains evidence of criminal activity. *See United States v. Nicksion*, 628 F.3d 368, 377 (7th Cir. 2010); *United States v. Williams*, 627 F.3d 247, 251 (7th Cir. 2010); *United States v. Zahursky*, 580 F.3d 515, 521 (7th Cir. 2009). "Probable cause exists when based on the known facts and circumstances, a reasonably prudent person would believe that contraband or evidence of a crime will be found in the place to be searched." *United States v. Richards*, 719 F.3d 746, 754 (7th Cir. 2013)(internal quotation marks omitted).

The report authored by Officer Insley (Exhibit 1), fails to mention narcotics at all, only that a Pontiac G8 would be traveling in a particular area. According to the arrest report authored by Officer Friddle (Exhibit 3), Inspector Marzetta informed him that WCPAT had probable cause to arrest Michael Haldorson on narcotics charges. Officer Friddle's report fails to mention any further details about that probable cause determination. In essence, Officer Friddle relied on the Inspector Marzetta's representations that they had probable cause to arrest Mr. Haldorson. At no point did Officer Friddle make an independent assessment of whether he had probable cause to arrest Mr. Haldorson, or search his person or his vehicle.

Once Officer Friddle stopped Mr. Haldorson, he contacted WESCOM to determine if there were any active warrants for the arrest of Michael Haldorson. WESCOM informed Officer Friddle that there were no active warrants for Mr. Haldorson. However, once Inspectors Marzetta and Insley arrived, they instructed Officer Friddle to arrest Michael Haldorson "on their charges." Again, Officer Friddle's

report completely lacks detail about how any of the officers or inspectors made their probable cause determinations.

Furthermore, it does not appear from either Inspector Insley's report, nor Officer Friddle's report that the basis for the WCPAT inspectors' probable cause to arrest was ever conveyed to the arresting officer. The foundation for probable cause to arrest and search was apparently based on an informant's tip. "Probable cause is a 'fluid concept,' and when an informant is involved, it may turn upon the informant reliability, basis for knowledge, and degree of detail, as well as the ability of the police to corroborate the information." *United States v. Washburn*, 383 F.3d 638 (7th Cir. 2004)(internal citations omitted*)*.

Here, probable cause to search Mr. Haldorson's vehicle was based entirely on the tip provided by C/S 14-15828 WC, a confidential source of unknown reliability. This confidential source had participated in a controlled purchase of cocaine from Mr. Haldorson almost a month before the incidents on June 23, 2015. No reports detail whether the confidential source and Mr. Haldorson remained in contact between June 1 and June 23, nor are there any reports that mention the details of the confidential source's alleged conversation with Mr. Haldorson on June 23, 2015. According to the report authored by Inspector Insley, he was contacted by the confidential source who told Inspector Insley that "Mike," would be in the area of Route 59 and Fort Beggs Drive in Plainfield, Illinois. The statement contained in Inspector Insley's report lacks sufficient detail to determine if the confidential source's information was reliable, and contained almost no detail. The confidential informant's "tip" was insufficient to provide probable

cause to search Mr. Haldorson's vehicle under the automobile exception and the evidence discovered during the search should be excluded.

**b. The Traffic Stop Provided an Insufficient Basis For The Search Of Mr. Haldorson's Vehicle.**

"An officer has probable cause for a traffic stop when she has an 'objectively reasonable basis to believe a traffic law has been violated." *United States v. Dowthard*, 500 F.3d 567, 569 (7th Cir. 2007). In Illinois, "no person shall drive or move any vehicle or equipment upon any highway with any lamp or device on the vehicle or equipment displaying a red light visible from directly in front of the vehicle or equipment except as otherwise provided in this Act." 625 ILCS 5/12-212. If a vehicle is pulled over pursuant to an officer's reasonable belief that a traffic violation has been committed, the officer may search the vehicle "when they have probable cause to believe it contains evidence of criminal activity." *United States v. Edwards* 769 F.3d 509, 514 (7th Cir. 2014).

According to the incident report authored by Officer Friddle, he was contacted by Will County CPAT Agent Marzetta, who instructed him to "stop a Black Pontiac G8 with White Sox specialty plates and red lights in the front grill and hood vents." Officer Friddle's report further indicates that he then observed the black Pontiac with red lights in the grill and hood vents, at which point he pulled over the vehicle. However, as shown in the squad car video disclosed to the defense, no red lights are visible in the grill nor hood vents of the black Pontiac G8. The basis for the stop is not just mistaken, it is non-existent. Furthermore, if Officer Friddle stopped Mr. Haldorson for an external lighting violation, no evidence of that crime would be found from searching the vehicle. The search of the vehicle was improper, and the evidence that was discovered from the search of the vehicle should be excluded.

###### c.   The Search Of The Vehicle Is Not Justified As A Search Incident to Arrest.

The search incident to arrest is yet another exception to the warrant requirement. The underlying bases justifying the search incident to arrest exception to the warrant requirement are "first, removing weapons to protect the officers making the arrest, and second, seizing evidence to prevent the arrestee from concealing or destroying it. *United States v. Robinson,* 414 U.S. 218, 251, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), citing *Chimel v. California,* 395 U.S. 752, 763 (1969).

Under *Arizona v. Gant,* 556 U.S. 332 (2009), a warrantless search of a vehicle incident to the arrest of one of its occupants requires reason to believe that the vehicle contains evidence of the offense of arrest.  However, that search is limited to areas within the immediate control of the arrestee's person.  *Chimel v. United States*, 395 U.S. 752, 763 (1969).  The purpose of this exception is two fold:  to protect the officer's safety and to safeguard any evidence that that arrestee might hide or destroy.  *Id.*   Therefore, "if there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to-arrest exception are absent and the rule does not apply." *Arizona v. Gant,* 556 U.S. at

According Inspector Marzetta's report, (Exhibit 4) upon arresting Michael Haldorson, Inspector Marzetta states that he searched Mr. Haldorson's person incident to arrest, recovering amounts of United States currency.   According to the report, Mr. Haldorson was then transported to the Plainfield Police Department.  Inspector Marzetta then relocated Mr. Haldorson's car to the Plainfield Police Department, where Inspector Marzetta conducted "an inventory search incident to arrest."  During the "inventory search incident to arrest," Officer Marzetta located a black backpack containing two

beverage cans, which contained various controlled substances hidden inside compartments in the cans.

Officer Marzetta's report describes the search leading to the discovery of the backpack as both an inventory search and a search incident to arrest. As a search incident to arrest, the search clearly exceeds this narrowly tailored exception to the warrant requirement. Officer Marzetta's report makes clear that the "inventory search incident to arrest" occurred after the car was removed to the Plainfield Police Department. At that point, Mr. Haldorson was in custody in an adult holding cell at the Plainfield Police Department. Mr. Haldorson would not have been able to access the car in order to gain possession of a weapon or destructive device, nor to destroy evidence. The search of the vehicle cannot be justified under the search-incident-to-arrest-exception to the warrant requirement. Thus, the evidence obtained during the search of the vehicle should be excluded.

**d. The Search of The Vehicle Was An Improper Inventory Search.**

Inventory searches "serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Colorado v. Bertine,* 479 U.S. 367, 372, (1987). Generally, "reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment." *Id.* at 374.

The Seventh Circuit has held "that a warrantless inventory search is constitutionally permissible if "(1) the individual whose possession is to be searched has been lawfully arrested," and "(2) the search satisfies the fourth amendment standard of reasonableness, i.e., it is conducted as part of the routine procedure incident to

incarcerating an arrested person and in accordance with established inventory procedures." *United States v. Wilson,* 938 F.2d 785, 789 (7th Cir. 1991).

The inventory search case law "emphasize standardized criteria, standard procedures, established routine, and the like worry that in the absence of formal procedures determining the metes and bounds of inventory searches, police officers would search cars at will for evidence of crime and if challenged say they were conducting an inventory search. The inventory search would then be "a pretext concealing an investigatory police motive." *South Dakota v. Opperman,* 428 U.S. 364, 376 (1976). "[A]n inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence." *Florida v. Wells,* 495 U.S.1, 4 (1990).

If Officer Marzetta's search of Mr. Haldorson's vehicle was an inventory search, that inventory search must be conducted pursuant to established department procedures in order to pass muster under the Fourth Amendment. Those regulations serve the fundamental purpose of protecting the public against police officers "use[ing] the excuse of an 'inventory search' as a pretext for broad searches of vehicles and their contents." *Florida v. Wells*, 495 U.S. 1 (1990). As Officer Marzetta searched the contents of the backpack, he discovered two beverage cans. The innocent nature of the beverage cans was apparent from his visual inspection of those cans. However, instead of recording the discovery of the two beverage cans, Officer Marzetta apparently began to manipulate the cans to determine if they contained hidden compartments, thus exceeding the scope of the inventory search by conducting further investigation of the items he discovered. Officer Marzetta exceeded the scope of a proper inventory search by investigating the beverage

11

cans for hidden compartments.  As a result, the search of the vehicle and the subsequent discovery of the contraband should be excluded from evidence.

**III.  Conclusion:**

In light of the above, Defendant Michael Haldorson respectfully requests this court for an evidentiary hearing in order to more fully develop the relevant facts and circumstances asserted herein; and, at the conclusion of that hearing enter its Order suppressing as evidence all evidence gained as a result of the illegal search of Mr. Haldorson's vehicle, including all of the controlled substances, the explosive devices, and explosive materials, and for any other such relief the Court deems just and proper.

Respectfully submitted,

/s/Quinn A. Michaelis

Quinn A. Michaelis
Attorney For Michael Haldorson
150 North Michigan Avenue
Suite 800
Chicago, Illinois 60601
312-714-6920

## CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2016, I electronically filed the above

**<u>DEFENDANT MICHAEL HALDORSON'S MOTION AND MEMORANDUM IN SUPPORT OF THE MOTION TO SUPPRESS</u>**

with the Clerk of Court using the CM/ECF system to all listed parties in the case.

Respectfully Submitted on April 7, 2016.


By His Attorney,

s/ Quinn A. Michaelis

Quinn A. Michaelis
Attorney For Michael Haldorson
150 North Michigan Avenue
Suite 800
Chicago, Illinois 60601
312-714-6920