UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO. 1:15-CR-00623-1 |
| | ) | |
| | ) | The Honorable Judge Matthew F. Kennelly |
| MICHAEL HALDORSON, | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S OPPOSITION TO THE GOVERNMENT'S APPLICATION FOR A SEARCH WARRANT

The defendant, Michael Haldorson, by and through his attorney Elizabeth A. Johnson, respectfully moves this Honorable Court pursuant to the United States Constitution, Federal Rules of Criminal Procedure, and the Local Court Rules, for the entry order denying the government's application for a search warrant filed on July 27, 2016.

**In support thereof states the following:**

1. On July 27, 2016, the government filed with this Honorable Court, an Application and Affidavit for a Search Warrant. (Docket No. 156).

2. The defendant opposes this Application for a Seearch Warrant for all of the reasons contained in the below herein incorporated Memorandum of Points and Authorities in Support of this Motion.

3. The defendant requests a hearing of the merits of this Application and Opposition.

**Wherefore**, the defendant, Michael Haldorson, prays that this Honorable Court grant this Motion.

1

**Dated: August 2, 2016.**

Respectfully Submitted:

/s/Elizabeth A. Johnson
_____

Elizabeth A. Johnson
Attorney for Michael Haldorson
Law Office of Elizabeth A. Johnson
P.O. Box 725, Morris, Illinois 60450
Phone: 773-609-0047
Email: lizlaw00@yahoo.com

## MEMORANDUM OF POINTS AND AUTHORITIES

On July 27, 2016, the government filed with this Honorable Court, an Application and Affidavit for a Search Warrant. (Docket No. 156). The application for the search warrant alleges support under Federal Criminal Procedure Rule 41(e)(2)(B), that states: "A warrant under Rule 41(e)(2)(A) may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information.  Unless otherwise specified, the warrant authorizes a later review of the media or information consistent with the warrant.  The time for executing the warrant in Rule 41(e)(2)(A) and (f)(1)(A) refers to the seizure or on-site copying of the media or information, and not to any later off-site copying or review." Fed. R. Crim. P. 41(e)(2)(A)-(B).

By means of this application, the government is seeking to search the cellular phone seized from Mr. Haldorson on June 23, 2016 when he was arrested by Plainfield Officer Friddle at the direction of WCPAT for probable cause for *previous narcotics transactions*, *previous charges*, and then members of WCPAT direct Officer Friddle to arrest him for *an outstanding warrant*.

2

This request is a fishing expedition. Even though the government was able to access and search the phone to no avail (Docket No. 156, pg. 4, *11[1]), they now improperly seek judicial permission to search every single bit of Mr. Haldorson's cellular phone, and essentially every app and account connected thereto, which subsequently opens to them free range access to stored data, both archived *and* present day/current data, in an effort to possibly obtain. (See Docket No. 156, page 9-10, *23 (a)-(d).

Further, the defense has not seen any reports from the examiner who apparently already searched the phones contents, or a summary of their findings.

## CONSTITUTIONAL AND OTHER LEGAL CONSIDERATIONS
## AND REQUIREMENTS

The application violations the Fourth Amendment to the U.S. Constitution in that is overbroad and irrelevant, and fails to state the government's request with particularity. (*See United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990), *Whren v. United States*, 517 U.S. 806 (1996), *Anderson v. Creighton*, 483 U.S. 635 (1987)). Fourth Amendment's particularity requirement because they did not make clear how the search is connected to the crime under investigation, or specificity about what they are looking for and where exactly they want to look.

In *Riley v. California*, the Supreme Court obliged and forbid warrantless searches incident to arrest of cell phones. (*See Riley v. California*, 134 S. Ct. 2473, 2495 (2014) ("Our answer to the

---

[1] In Affidavit made in support of the application for the search warrant, ATF Agent Gallagher states that "according to a representative of the RCFL, they have not been able to search the content contained within the subject pho Subject Phone ne. According to the RCFL representative, examiners were able to bypass the device's security code but firmware prevented the examiner from accessing any data, including stored text messages, stored within the Subject Phone."

3

question of what police must do before searching a cell phone seized incident to an arrest is accordingly simple—get a warrant.")).

*United States v. Winn*, 79 F. Supp. 3d 904, 909 (S.D. Ill. 2015)

Police have also pushed the envelope for broad warrants in drug cases. Law enforcement has long recognized that drug dealers use cell phone functions—particularly text messages—to conduct their illegal operations. In both pre- and post-Riley drug cases, it is therefore very common for officers to request cell phone search warrants. In some instances, however, police go beyond communications data such as text messages and call logs and also seek warrants for unrelated applications such as photos and videos. (*See, e.g., United States v. Garcia-Alvarez*, No. 14-cr-0621 JM, 2015 WL 777411, at *1 (S.D. Cal. Feb. 24, 2015) (describing the objects of the search in the warrant)). The officers do not specify why they have suspicion that there would be photographic evidence of drug transactions, but magistrates nevertheless issue warrants to search for photographs anyway. Indeed, in some cases, magistrates issue cell phone search warrants for photographs and videos based on nothing other than officers' testimony that in their experience cell phones often hold evidence of drug dealing. (*See, e.g., United States v. Herevia*, No. RDB-13-639, 2014 WL 4784321, at *8 (D. Md. Sept. 23, 2014) (finding probable cause for a warrant based on these factors)).

## THERE IS NO PROBABLE CAUSE TO SUPPORT THE GRANTING OF THE APPLICATION AND THE ISSUANCE OF THE SEARCH WARRANT

There is no legitimate probable cause to support the issuance of this search warrant. Probable cause is "a fluid concept, turning on the assessment of probabilities in particular factual

contexts, not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). The existence of probable cause is determined by an analysis of the totality of the circumstances surrounding the intrusion. Id. Probable cause does not deal with hard certainties, but with probabilities. *Id*., at 241. Probable cause to search exists if there is "a fair probability that contraband or evidence of a crime will be found in a particular place." *Id*., at 238. The Fourth Amendment requires a nexus between the item to be seized and the criminal behavior. *Warden v. Hayden*, 387 U.S. 294, 307 (1967).

The search warrant application/affidavit here, as well as the others issued in this case, is supported by false, inaccurate, or misleading information. From the very beginning of the case at bar there has been no legitimate probable cause shown for *any* searches or arrests. This is demonstrated from the beginning of the case, with scant police reports, no supporting documentation, a lack of proper discovery and evidence, including but not limited to not much documentation by law enforcement of possible suspected criminal activity being/having been/about to be committed, a suspect, or *any* of the information provided to Insp. Insley, or any other law enforcement official, that led to the investigation in this case. There is documentation of Insp. Insley's questionable and criminal actions of knowingly violating a person's right to privacy by recording them without consent or authorization. This is the *very first* piece of investigatory evidence.

The government has *no probable cause* to have seized the cellular phone in the first place because the phone is the fruit of an illegal search that followed an illegal stop of Mr. Haldorson's vehicle on June 23, 2015 at which time he was arrested by Plainfield Officer Friddle at the direction

5

of WCPAT for probable cause for *previous narcotics transactions*, *previous charges*, wherein members of WCPAT direct Officer Friddle to arrest him for *an outstanding warrant*. (Gov't Bates Nos. 1802-1803, Inspector T. Insley's Arrest Synopsis.) According to the discovery, Mr. Haldorson was arrested on June 23, 2015 solely for an alleged purchase made by the Source from Mr. Haldorson. The Source was the only witness to this alleged transaction. Although, WCPAT Inspector Thomas Insley, in violation of the Illinois Eavesdropping Act, was listening and/or recording the alleged event, there is no direct evidence of criminal activity or corroboratory evidence demonstrating the credibility or reliability of the informant found on the recording. In fact, the only criminal activity that we can be sure of on June 1, 2015, is that WCPAT Inspector Thomas Insley committed a class 4 felony under Illinois law having not sought any authorization from the local Duty Judge, Will Co. States Attorney office, or consent from the subject, Mr. Haldorson. This law enforcement officer broke the law in order to make an arrest without even attempting *any* other means of surveillance at a time when he did not have enough information or any evidence to do so and they've tried to cover it up.

Additionally, the defense has been denied any and all discovery information or documents pertaining to the alleged use of the Official Advance Funds on June 1, 2015, the alleged attempted/planned use of the Official Advance Funds on June 23, 2015, the use of a recording device on June 1, 2015, and the alleged "overhear" that occurred on June 23, 2015. There has been absolutely no information provided regarding confidential source/information utilized by WCPAT; not the information he alleged provided law enforcement, or when, how, and where, and no information regarding the Source himself, prior use of identified source by law enforcement or

6

the reliability/credibility of the Source and his information. However, the defense's requests for information regarding said payments have also been denied by the government.

## FACTS ADDED TO FILINGS, NOT CONTAINED IN THE DISCOVERY

As stated above, the only place that contains "facts" about the June 1, 2015 recording other than the fact that it happened and the recording itself (if even original since we have no way to determine that at this point) are contained in the Government's Response (Docket No. 97, pgs. 1-2), written by the attorney for the government. There is no other report or otherwise that this information is contained in. The requests by the defense for this information, documentation or otherwise have been denied by the government and to the best of the defense's knowledge do not exist. It is important to note that the officers did not take any photographs of the alleged text messages when showed to them. These facts were not present in this case until it arrived at the federal level. Since these additional facts about June 23, 2015 were added several months after the case was originally charged in state court, the government cannot produce any supporting evidence for the allegations.

## FOURTH AMENDMENT'S "PARTICULARITY" REQUIREMENT

A court deciding whether to issue a search warrant must determine whether the warrant states probable cause that a crime had been committed, and that the property to be searched will contain evidence of the criminal offenses from the information provided within the four corners of the search warrant application. *See United States v. Phua*, 100 F. Supp. 3d 1040 (Dist. Court, D. Nevada, 2015). The fact that the grand jury indicted the Defendants does not state probable cause for issuance of a search warrant. *Id*. The grand jury found probable cause based on

7

whatever evidence was presented to it. *Id.* The court has no way of knowing what evidence was submitted to the grand jury and may not simply find that because the grand jury found probable cause to believe the defendant committed a criminal offense and that the devices listed in the indictment should be forfeited, that probable cause exists to believe the devices contain evidence of the crimes.

The purpose of the particularity requirement is to prevent general searches. *See United States v. Phua*, 100 F. Supp. 3d 1040 (Dist. Court, D. Nevada, 2015). By limiting the authorization to search the specific areas and things for which there is probable cause to search, the particularity requirement ensures that the search will be carefully tailored to its justifications, and will not become a wide-ranging, exploratory search the Fourth Amendment prohibits. *Id.* The scope of a lawful search is defined by the object of the search. *Id.* The test is an objective one: would a reasonable officer have interpreted the warrant to permit the search at issue. *Id. (quoting United States v. Gorman,* 104 F. 3d 272, 274 (9th Cir. 1996)).

The purpose of the particularity requirement is to prevent general searches. *Id.* By limiting the authorization to search the specific areas and things for which there is probable cause to search, the particularity requirement ensures that the search will be carefully tailored to its justifications, and will not become a wide-ranging, exploratory search the Fourth Amendment prohibits. The scope of a lawful search is defined by the object of the search. Id. The test is an objective one: would a reasonable officer have interpreted the warrant to permit the search at issue. *United States v. Gorman*, 104 F. 3d 272, 274 (9th Cir. 1996).

## PROTOCOL

The government does not proper set forth a protocol. *See, e.g., United States v. Phua*, Nos. 2:14-cr-00249-AGP-PAL, 2015 WL 1281603, at *7 (D. Nev. Mar. 20, 2015) ("The court will not approve a search warrant for electronically stored information that does not contain an appropriate protocol delineating what procedures will be followed to address these Fourth Amendment issues."); In re Premises Known as Three Cellphones and One Micro-SD Card, No. L4-MJ-8013-DJW, 2014 WL 3845157, at *2 (D. Kan. Aug. 4, 2014) (requiring the government to submit a search protocol before issuing a warrant); *In re Search of the Premises Known as a Nextel Cellular Telephone*, No. 14-MJ-8005-DJW, 2014 WL 2898262, at *12 (D. Kan. June 26, 2014) (ruling that the government's "search protocol" failed to adequately describe with particularity its search methodology). The government begins by identifying a protocol, then another, and then stating that it may use any other protocol. Essentially, the government identifies no protocol at all because it states that it may use any protocol 'out there'.

The government is seeking all information, in its finest form, located within the phone without telling us how extensive that information by reach. Even though they have requested a certain time frame, they have also requested to open and review everything to determine if that information. However, we are not told the reach of this information. Without this knowledge this search could reach everything from the moment the phone was acquired and use began, technically up to this very moment in time. It is unknown whether accessing this data from apps will access servers that contain, say information from google…and if it does, well then accessing the google account will most likely not be limited to the use period of that phone, but to the use period of the google account itself which also could reach a span of, say 10 years of more, including Mr.

9

Haldorson's current communications, including privileged communications with his attorneys, doctors, etc. This should absolutely not be allowed, under any circumstances.

## IN THE ALTERNATIVE, THE DEFENDANT SUGGESTS THE IMPOSITION OF SEARCH RESTRICTIONS

If the court finds that there is probable cause for a search, then the search should be limited to the facts of this case. If anything, the government should only be able to search for and retrieve any corroborated text message between the two identified numbers.

As stated above, there are no facts to support conspiracies, trafficking, etc. The only, yet completely unsupported, allegation tying the phone to any of this is that there was a text message. In some "simple" cases, particularly certain street crimes, magistrates can restrict warrants to the particular cell phone application for which there is probable cause. For example, police regularly conduct drug stings by having an informant or undercover officer exchange text messages with a suspected drug dealer. In these cases, the search warrant should limit officers to searching the text messaging application. A search of other data, such as photographs or videos, should not be authorized. Restricting where police can search on a cell phone has a clear parallel in the tangible world. When an informant says that a drug dealer keeps heroin in the trunk of his car, courts have long restricted searches to the area where there is probable clause, the trunk, rather than the entire vehicle. The same logic should apply in the electronic context. Courts could thus narrow search warrants in many simple cases, particularly street-level drug investigations, by restricting where officers can search, rather than focusing on the more difficult protocol question of how the officers should organize and carry out their search. However, because of the sheer amount of data held on

10

cell phones and the clear overbreadth, particularity, and good faith exception problems present in post-Riley search warrants, addressing the execution of the warrant ex post is extremely problematic. *Phua, id.* Therefore, this warrant should be denied because it cannot properly protect the privacy rights of the defendant in this case as there is simply no evidence to support such a far reaching search.

The government's case will not be won or lost by an extensive, all-encompassing search of his cellular phone. But Mr. Haldorson's right to privacy, among other rights, will be violated without recourse at the hands of law enforcement officers running wild to dig up evidence against a man. This is exactly what the laws and constitutions are written to protect against. The information and evidence necessary for the government to prove their elements, if it exists, can be easily ascertained from what they have in front of them, allowing these evidence digging missions is uncalled for and unconstitutional.

## CONCLUSION

For all of the reasons stated above, the defendant, Michael Haldorson, requests that this Honorable Court deny the government' application for a search warrant of the cellular phone.

**Dated: August 2, 2016**.                                  Respectfully Submitted:

/s/Elizabeth A. Johnson
_____
Elizabeth A. Johnson
Attorney for Michael Haldorson
Law Office of Elizabeth A. Johnson
P.O. Box 725, Morris, Illinois 60450
Phone: 773-609-0047
Email: lizlaw00@yahoo.com

### **DEFENDANT'S VERIFICATION BY CERTIFICATION**

On August 2, 2016, under penalty of perjury as provided by 735 ILCS 5/1-109, the undersigned affirms that the foregoing statements are true, except as to such matters as are stated on information and belief, and, as to such matters, the undersigned affirms as aforesaid that she actually is informed as she represents and that she truly believes such information to be true.

**/s/Michael S. Haldorson**

### **ATTORNEY'S VERIFICATION BY CERTIFCIATION**

On August 2, 2016, under penalty of perjury as provided by 735 ILCS 5/1-109, the undersigned affirms that the foregoing statements are true, except as to such matters as are stated on information and belief, and, as to such matters, the undersigned affirms as aforesaid that she actually is informed as she represents and that she truly believes such information to be true.

**/s/Elizabeth A. Johnson**