UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 15 CR 623 |
| v. | |
| MICHAEL HALDORSON | Hon. Matthew F. Kennelly |
| Defendants. | |

## DEFENDANT MICHAEL HALDORSON'S SUPPLEMENT TO MOTION TO SUPPRESS EVIDENCE

The defendant, MICHAEL HALDORSON, by and through his attorney, Holly N. Blaine, pursuant to the Fourth and Fifth Amendments to the Constitution of the United States, respectfully supplements his previously filed motion to suppress evidence as follows:

All evidence obtained as a result of the unlawful search of the defendant's locked bedroom located at 24030 Lockport St., Plainfield, Illinois on June 24, 2015, namely the fireworks, controlled substances, and computers, including the data contained on the computers, recovered from the search of the premises. This evidence must be suppressed because (1) Ms. Figas lacked the authority to consent to any search of Defendant's locked bedroom, (2) the officers conduct demonstrates that no exception to the warrant requirement applies to this search, (3) the application for the warrant misstates key facts, tainting the subsequent search pursuant to the warrant and (4) the data contained on the seized computers is tainted as "fruit of the poisonous tree," despite the July 2, 2015 search warrant for digital media.

### SUPPLEMENTAL FACTS

Defendant was arrested by a Plainfield Police Department officer and members of the Will

County Cooperative Police Assistance Team (hereinafter WCPAT) on June 23, 2015[1]. During the course of their investigation, WCPAT officers determined that Defendant was living in an apartment with Allyson Figas located at 24030 Lockport St. in Plainfield. Master Sergeant Ladd, Inspector Marzetta, Inspector LeStronge, Inspector Kaminski and ATF Agents Marcus and Zito responded to Lockport Street. The officers located the apartment shared by Ms. Figas and Defendant, the team was granted entry by Ms. Figas and discussed Defendant's arrest with her beginning at approximately 3:55 a.m.

At 4:18 am, Ms. Figas signed a pre-printed Illinois State Police Consent to Search form. Ms. Figas then showed M/Sgt. Ladd the location of Defendant's bedroom, and indicated that it was locked and she did not possess a key. Upon completion of the search of the common areas of the apartment, during which time Ms. Figas remained in the apartment with the officers, M/Sgt. Ladd used Defendant's keys, taken from him during his arrest, to open the locked bedroom door and entered Defendant's bedroom. Upon entering the bedroom, he saw fireworks, which were then removed by the officers. He exited the bedroom through a second door, which he learned was unlocked only after opening it from inside the bedroom. M/Sgt. Ladd then completed a complaint for search warrant, which was granted by Judge Carlson at 6:50 a.m. Officers returned to the apartment at 7:05 a.m. and conducted a second search, which revealed controlled substances and two laptop computers in Defendant's bedroom.

## ARGUMENT

---

[1] Prior counsel filed Defendant's original motion to suppress evidence and memorandum in support of that motion on April 7, 2016 (Dkts. 75–76). The recitation of facts contained in the memorandum are incorporated by reference, and only facts that were not mentioned in the previously filed motion are recited here.

Because Allyson Figas lacked both actual and apparent authority to consent to any search of Defendant's locked bedroom, and no exception to the warrant requirement applies, the evidence seized in both searches must be suppressed.

"[A] Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable." *Kyllo v. United States*, 533 U.S. 27, 33 (2001). It is a "basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Groh v. Ramirez*, 540 U.S. 551, 559 (2004). This principle encompasses rented apartments. *See Chapman v. United States*, 365 U.S. 610, 616-17 (1961). Even though Defendant's name is not on the lease for the apartment, he paid half of the rent and maintained a locked bedroom on the premises. Ms. Figas identified Defendant as her roommate when M/Sgt. Ladd first spoke to her upon arrival at 3:55 a.m.[2] Once a reasonable expectation of privacy has been established, a search will only be lawful if it was reasonable. *See Riley v. California*, 134 S.Ct. 2473, 2482 (2014).

The consent exception to warrantless searches does not apply to this case because Defendant has clearly established a reasonable expectation of privacy in his locked bedroom and Ms. Figas lacked both actual and apparent authority to consent to the search of his locked bedroom. Even if police receive consent to search, the resulting search is invalid if the consent-giver did not have actual authority over the area searched. *United States v. Matlock*, 415 U.S. 164, 171 (1974). Ms. Figas did not possess common authority over the bedroom. *See Illinois v. Rodriguez*, 497 U.S. 177,

---

[2] Even if this situation is more similar to a hotel room, where a guest pays a fee to rent a bedroom, Defendant has a reasonable expectation of privacy in his locked room. *See Stoner v. California*, 376 U.S. 483, 490 (1964). Likewise, if Defendant was merely an overnight guest in Ms. Figas's apartment, he still has a reasonable expectation of privacy in his locked room. *See Minnesota v. Olson*, 495 U.S. 91, 98 (1990).

3

181 (1990). "Common authority rests on a mutual use of the property by persons generally having joint access or control for most purposes." *Id.* But most importantly, a housemate's consent to search the defendant's locked bedroom was shown to be invalid in *United States v. Jimenez* 419 F.3d 34, 40-41 (1st Cir. 2005). *Jimenez* rests on nearly identical facts to this case. In *Jimenez*, a housemate consented to the search of a shared home, identified a locked bedroom as belonging to the defendant, characterized that bedroom as defendant's space, and did not have a key to the locked bedroom. Here, Ms. Figas identified a locked bedroom as belonging to Defendant and told the officers that she did not have a key to his space. She therefore lacked the actual authority to consent to the officers' search of Defendant's bedroom.

When a third party without actual authority consents to a search, it may still be valid "if the police relied in good faith on a third party's apparent authority to consent to the search." *United States v. Gillis*, 358 F.3d 386, 390 (6th Cir. 2004). The test is objective: "would the facts available to the officer at the moment ... warrant a man of reasonable caution in the belief that the consenting party had authority over the premises?" *Illinois v. Rodriguez*, 497 U.S. 177, 188 (1990). The answer in this case is unequivocally no, given that Ms. Figas told the officers that the bedroom belonged to Defendant, that she was not allowed into his bedroom, and that she did not have a key to his bedroom. The officers could not objectively believe, based on Ms. Figas' statements and the fact that she did not possess a key to Defendant's bedroom, that she had the apparent authority to consent to their search of Defendant's locked bedroom.

The government relies on a "safety" exception to the warrant requirement, arguing that the officers believed that there may be explosive devices in Defendant's bedroom and that the residents and business owners may have been in danger. The problem with this theory is that there is no

generalized "safety" exception to the warrant requirement. If the Government intended to characterize this search as a protective sweep, their argument must fail pursuant to *Maryland v. Buie*, 494 U.S. 325 (1990), which allows protective sweeps of buildings *incident to the arrest of a person in the building* and is limited to "spaces immediately adjoining the place of arrest from which an attack could be imminently launched." *Id.* at 334. Defendant was not arrested at the apartment; he had been arrested hours earlier while driving near Route 59 and Fort Beggs Drive. By the officers' own account, they entered the premises for the purpose of seizing contraband they believed Defendant to be keeping there, which is clearly contrary to protective sweep jurisprudence. *See, e.g., United States v. Rodgers*, 924 F.2d 219 (11th Cir. 1991).

The government may also argue that the police had a reasonable belief, based on Defendant's statements, that he may be keeping explosives at his residence, which created an exigent circumstance exception to the warrant requirement. The government bears the burden of proof to establish that exigent circumstances required the warrantless entry into Defendant's bedroom. *See United States v. Robinson*, 414 U.S. 218, 243 (1973). The Fourth Circuit dealt with a similar issue and found that the presence of a grenade in a locked closet did not create a reasonable belief of a life-threatening emergency that would trigger the exigent circumstances exception to the warrant requirement. *See United States v. Yengel*, 711 F.3d 392, 398-99 (4th Cir. 2013). Furthermore, the officers' own conduct belies this rationale. M/Sgt. Ladd writes in his report that a period of at least twenty minutes elapsed from the time that the officers located the apartment and made contact with Ms. Figas, and the time that Ms. Figas signed the consent to search form. During this time, Ms. Figas remained in the apartment with the officers. Even after the consent to search form was signed, officers did not ask Ms. Figas to leave or remove her from the apartment while they searched

the common areas prior to unlocking the bedroom door. Only *after* M/Sgt. Ladd opened Defendant's locked bedroom door and discovered fireworks inside did the officers ask that Ms. Figas leave the building "for her safety," and only *after* the officers recovered the fireworks did they then seek a warrant.

Furthermore, the narrative contained in M/Sgt. Ladd's written report is in direct contradiction to his complaint for search warrant. M/Sgt. Ladd's written report details that after receiving Ms. Figas' consent to search the apartment, the officers "began our search in the common areas of the apartment" using a second exterior apartment entry door from the building hallway to access a common area containing a refrigerator and a closed interior door, and that he only made the decision to enter Defendant's locked bedroom after no explosives were located in the common areas to "conduct a safety search."

In contrast, M/Sgt. Ladd's complaint for search warrant states that after Ms. Figas signed the consent to search form, then showed him to Defendant's locked bedroom door. He then states that the bedroom had a second unlocked door, and that he entered through this unlocked door while Insp. Marzetta used Defendant's keys to open the locked door so both officers could make entry into the bedroom. After making entry into the bedroom and removing the fireworks found inside with the assistance of the ATF agents, only then did M/Sgt. Ladd search the common areas of the apartment.

These reports cannot be reconciled. M/Sgt. Ladd's complaint for search warrant directly contradicts his written report, which very clearly states that the common areas of the apartment were searched, with Ms. Figas present in the apartment, prior to the bedroom being opened and searched, and belies his reasoning that the officers' warrantless search of Defendant's locked

bedroom was conducted for "safety" reasons or that exigent circumstances existed. Ms. Figas remained in the apartment for at least twenty minutes between the officers' arrival and the time she signed the consent to search form. Moreover, Ms. Figas remained in the apartment while the officers searched the common areas, which took additional time and, if exigent circumstances existed, exposed Ms. Figas to unacceptable risk during the initial search. Ofc. Kaminski reports interviewing Ms. Figas at approximately 5:00 a.m., while M/Sgt. Ladd prepared the complaint for search warrant, meaning that over an hour had elapsed from the time that the officers first made contact with Ms. Figas and the time that she was removed from the apartment. It is unclear from the reports exactly how long Ms. Figas remained in the apartment after the officers' arrival, but it is safe to say that the conduct reported by M/Sgt. Ladd clearly demonstrates a lack of urgency in securing Ms. Figas' safety and completely undermines the government's arguments that a warrantless search was justified under the exigent circumstances doctrine.

Finally, the warrants to search the computers recovered from Defendant's locked bedroom for their data pursuant to these illegal searches must be quashed and all data recovered from the computers must be suppressed. The data contained on the illegally seized computers is tainted as "fruit of the poisonous tree" due to the impermissible way the computers were obtained. The exclusionary rule "prohibits the introduction of derivative evidence, both tangible and testimonial, that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search..." *Murray v. United States*, 487 U.S. 533, 536 (1988). The data contained on the computers is a product of the seizure of the computers themselves and the taint cannot be removed from the data by attenuation or the subsequent warrant. "The notion of the 'dissipation of taint' attempts to mark the point at which the detrimental consequences of illegal police action becomes

7

so attenuated that the deterrent effect of the exclusionary rule no longer justifies its cost." *Brown v. Illinois*, 422 U.S. 590, 609 (1975). The burden of showing admissibility rests on the prosecution. *See Taylor v. Alabama*, 457 U.S. 687, 690 (1982). The factors to consider when evaluating attenuation are the length of time between the illegal seizure and the discovery of the evidence, the presence of intervening circumstances, and the purpose and flagrancy of the official misconduct. *See United States v. Conrad*, 673 F.3d 728, 733 (7th Cir. 2012).

In this case, the government cannot meet its burden. The search that produced the computers occurred mere hours after Defendant's arrest, and Insp. Insley submitted a complaint for search warrant for digital media on July 2, 2015, which was granted the same day by Judge Burmilla. This is insufficient time to allow the taint to dissipate. Next, the purposeful-and-flagrant-conduct factor "is considered the most important because it is tied directly to the rationale underlying the exclusionary rule, deterrence of police misconduct." *United States v. Reed*, 349 F.3d 457, 464-65 (7th Cir. 2003). It exists where "(1) the impropriety of the official's misconduct was obvious or the official knew, at the time, that his conduct was likely unconstitutional but engaged in it nevertheless; and (2) the misconduct was investigatory in design and purpose and executed in the hope that something might turn up. *United States v. Simpson*, 439 F.3d 490, 496 (8th Cir. 2006) (citing *Brown*, 422 U.S. at 605). M/Sgt. Ladd's misconduct in opening Defendant's locked bedroom was obvious and was clearly investigatory in design, as discussed at length above. Likewise, there are no intervening events capable of attenuating the taint of the seizure. "[T]he type of intervening events that serve to attenuate official misconduct are those that sever the causal connection between the illegal arrest and the discovery of the evidence." *United States v. Reed*, 349 F.3d at 464. The computers were held by WCPAT between their seizure and the search pursuant

to the July 2, 2015 warrant, and because the computers remained in police custody during that time, there were no events that could possibly sever the causal connection between the illegal initial entry and seizure and the later discovery of the evidence stored in the data on the computers when they were submitted to Chicago Regional Computer Forensics Lab after the warrant was obtained.

The government will likely argue that the data from these computers should be admissible under the inevitable discovery or independent source doctrines. "[I]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means," then the exclusionary rule will not prohibit the introduction of the evidence. *Nix v. Williams*, 467 U.S. 431, 444 (1984). Inevitable discovery, however, is not the same thing as possible or even probable discovery. "[W]hat makes a discovery 'inevitable' is not probable cause alone … but probable cause plus a chain of events that would have led to a warrant (or another justification) independent of the search." *United States v. Brown*, 64 F.3d 1083 (7th Cir. 1995). This is likewise a test that the government cannot satisfy. The fact that the WCPAT officers could easily have obtained a warrant to search Defendant's locked bedroom, but chose not to get a warrant until *after* they made their first illegal warrantless entry, searched the room, and seized the fireworks. This is fatal to the later warrants for the second search of the bedroom and the warrants to search the computers for their data. "If evidence were admitted notwithstanding the officers' unexcused failure to obtain a warrant, simply because probable cause existed, then there would never be any reason for officers to seek a warrant." *United States v. Mejia*, 69 F.3d 309 (9th Cir. 1995). *See also United States v. Cherry*, 759 F.2d 1196, 1206 (5th Cir. 1985) (concluding inevitable discovery doctrine did not apply where agents "could have obtained a warrant but made no effort to do so"); *United States v. Johnson*, 22 F.3d 674, 683 (6th Cir. 1994) ([T]o hold that simply because the police could

have obtained a warrant, it was therefore inevitable that they would have done so would mean that there is inevitable discovery and no warrant requirement whenever there is probable cause."). It is not inevitable here that, even if probable cause to search Defendant's locked bedroom existed, the data contained on the seized computers would have been discovered had the officers chosen to get a warrant prior to entering Defendant's locked bedroom. And, as discussed above, this doctrine cannot cure the taint of the initial warrantless search that led to both warrants for the second search of the bedroom and the warrant for the search of the data contained on the computers.

Neither does the independent source rule save the admissibility of the data contained on the computers, because the officers' decision to apply for a search warrant stemmed from the illegal search of Defendant's locked bedroom. *See United States v. Gillespie*, 650 F.2d 127, 129 (7th Cir. 1981). The independent source rule is not available if the information obtained during an initial, illegal search is used to obtain a search warrant for the second, independent search. *Murray v. United States*, 487 U.S. at 543-44 (1988). Again, the burden is on the government to prove that there is an independent source for the disputed evidence. *United States v. Forbes*, 528 F.3d 1273, 1279 (10th Cir. 2008). This is a burden that the government cannot meet. For the reasons discussed above, which closely relate to this exception as well as the inevitable discovery doctrine, the taint from the initial warrantless search so contaminates the July 2, 2015 search warrant for digital media as to render it worthless.

Because Ms. Figas lacked both actual and apparent authority to consent to the search of Defendant's locked bedroom and no exception to the warrant requirement applies, and because the subsequent warrants to search Defendant's locked bedroom and the digital media on the computers recovered during the second search are so tainted by the initial warrantless search, this

motion should be granted and the fireworks, controlled substances and two laptop computers, including all data contained on the computers seized in these searches should be suppressed.

                                                Respectfully submitted,
                                                /s/ Holly N. Blaine
                                                Attorney for Michael Haldorson
                                                 Holly N. Blaine (ARDC No. 6294873)
                                                 BLAINE & VANZANT, LLP
                                                 921 Brown Avenue
                                                 Evanston, Illinois 60202
                                                 Tel.: (312) 788-7584
                                                 E-mail: hnb@blainevanzant.com

# CERTIFICATE OF SERVICE

      I hereby certified that on the 10th day of April 2017, I electronically filed **DEFENDANT MICHAEL HALDORSON'S SUPPLEMENTAL MOTION TO SUPPRESS EVIDENCE**, with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

    AUSA Bolling Haxall
    AUSA Brian Wallach
    Office of the United States Attorney
    219 S. Dearborn, 5th Floor
    Chicago, IL 60604

and hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants: none.

                                                      Respectfully Submitted

                                                    /s/ Holly N. Blaine
                                                    Attorney for Michael Haldorson
                                                      Holly N. Blaine (ARDC No. 6294873)
                                                      BLAINE & VANZANT, LLP
                                                      921 Brown Avenue
                                                      Evanston, Illinois 60202
                                                      Tel.: (312) 788-7584
                                                      E-mail: hnb@blainevanzant.com